Dorothy SVIHLA, Plaintiff and Respondent,

v.

Ervin SVIHLA, Defendant and Appellant.

No. 8096.

Supreme Court of North Dakota.

Jan. 21, 1964.

Maurice G. LaGrave, Mandan, for defendant and appellant.

Stokes, Vaaler, Gillig & Warcup, Grand Forks, for plaintiff and respondent.

ERICKSTAD, Judge.

This is an appeal by the defendant Ervin Svihla from an order of the District Court of Grand Forks County which found the defendant in contempt of court.

This order arose out of the violation by the defendant of a judgment which the plaintiff had secured and which read, in part, as follows:

"4.

"That the defendant pay to the plaintiff for the support of said minor children the sum of $100.00 per month payable in semi-monthly installments of $50.00 each commencing on the 15th day of April, 1962, and thereafter on the 1st and 15th day of each and every month until further order of the court; that the defendant pay to the plaintiff for alimony the sum of $75.00 per month for a period of fifteen months payable in semi-monthly installments of $37.50 each commencing on the 15th day of April, 1962, and a like sum on the 1st and 15th of each and every month thereafter until fifteen monthly installments have been paid; thereafter, the sum of $50.00 per month payable in semi-monthly installments of $25.00 each, each installment payable on the 1st and 15th of each and every month thereafter until further order of the court.

"5.

"That the defendant pay to plaintiff's attorney, Arthur W. Stokes, the sum of $200.00 for attorney fees and suit money to be paid in monthly installments of $10.00 per month until the entire sum of $200.00 is paid."

The judgment which contained this provision was entered by the Clerk of District Court for Grand Forks County on April 13, 1962.

To support an order directing the defendant to show cause why he should not be held in contempt of court for having failed to make the payments required by the aforesaid judgment, the plaintiff's attorney signed and submitted to the district court an affidavit in which he averred, among other things, that the aforesaid judgment was served upon the defendant's attorney by mail. Based upon this affidavit, an order was issued, directing the defendant to show cause why he should not be found in contempt for having failed to make the payments required by the said judgment.

Following the hearing on said order, the order from which this appeal is taken was issued.

Assuming, without deciding, that service upon a party's attorney of a notice of the entry of a divorce judgment decreeing periodic support payments is sufficient service to bring the party into contempt of court upon proof of a violation of the judgment, we must first determine whether, under the circumstances of this case, there was a valid service of the aforesaid notice upon the party's attorney.

In this connection, we note that the plaintiff's attorney sent the defendant's attorney a letter dated April 10, 1962, which reads as follows:

"I am enclosing herewith for service upon you by mail copy of Order of Judge Bangs, copy of Findings of Fact, Conclusions of Law, Order for Judgment and Judgment."

The afore described papers were enclosed. The letter and the copies were admitted in evidence, without objection, as Defendant's Exhibit 6.

To support the plaintiff's application for an order requiring the defendant to show cause why he should not be held in contempt of court for failure to make the payments required in the judgment, the plaintiff's attorney filed an affidavit stating, among other things, that the "judgment was served upon the defendant's attorney by mail on April 10, 1962."

The record indicates that the Clerk of District Court of Grand Forks County entered the judgment on April 13, 1962.

The plaintiff tried to indicate by affidavit dated June 11, 1962, signed by one Pauline Molvig, that the copy of the judg-

ment was actually not mailed until after the judgment was entered on April 13, 1962. However, as the certificate settling the statement of the case does not include this affidavit, it cannot be considered by this court. It should be further noted that the hearing on the order to show cause was held on June 7, 1962.

The settled statement of the case seems to be in accord with the provisions of Section 28–27–07 of the North Dakota Century Code, the applicable part of which reads as follows:

> "28–27–07. Record on appeal.—Upon appeal the record must contain:
>
> \*    \*    \*    \*    \*    \*
>
> "2. From an order, the original papers used by each party on the application therefor, the reporter's minutes, if any, duly transcribed, and the evidence upon which such order is based, duly certified as correct by the trial judge. Such record shall be duly authenticated and transmitted by the clerk of the district court. \* \* \*" North Dakota Century Code.

■ We therefore conclude that service by mail upon the defendant's attorney of a copy of the divorce judgment decreeing periodic support payments, three days prior to the entry of the judgment, was not a valid service of the notice of the entry of the judgment.

A new issue, not asserted by the appellant, now presents itself for our consideration. This issue is whether the appellant had actual knowledge of the judgment, and, if so, the effect of such knowledge.

The transcript of the proceedings of the order to show cause why the appellant should not be held in contempt of court for his failure to make the payments called for in the judgment does not disclose any positive testimony that the appellant had actual knowledge of the judgment.

The affidavit in support of the order to show cause, signed by the respondent's attorney, does not allege that the appellant has actual knowledge of the judgment. It does, however, allege that judgment was entered, requiring the appellant to make certain payments; that the judgment was served by mail upon the appellant's attorney; that, since that time, the appellant has failed to make payments other than the sum of $50.00; that the appellant is in default; and that the appellant has made untrue representations to the Welfare Department, to the respondent's detriment.

The return to the order to show cause, which is signed by the appellant, neither denies nor admits that the appellant had actual knowledge of the judgment. The return is in three parts. The first part denies that the appellant was personally served with "Judgment and Decree of this Court ordering him to pay any amounts as set forth in Plaintiff's moving papers." In the second part, the appellant denies that he has voluntarily interfered with the respondent's relationship to the Welfare Department. The material portion of the third part reads as follows:

> "(3) Defendant affirmatively states that [he] has continued to support the children of the parties even though there has been no order for temporary support during the pendency of this action \* \* \*."

The following is a portion of the memorandum opinion of the trial court:

> "The only defense that the Defendant has made, is the one stated in his Return to the Order to Show Cause, in which he denies that he has ever been served with the Judgment and Decree of this Court; but he does not deny knowledge of the Judgment and Decree.
>
> "At the time of the Hearing, on the Order to Show Cause, Defendant's Attorney admitted that he received a copy of the Judgment and Decree.

"I think it is fair to assume that Defendant received actual notice and knowledge of the Judgment and Decree through his Attorney."

■ In this connection, Corpus Juris Secundum states the rule as follows:

"A person ordinarily cannot be brought into contempt for noncompliance with an order or decree of court, unless personal service thereof is made or actual knowledge of such order is had by him." 17 C.J.S. Contempt § 18 (1963).

■ If a valid service of the notice of the entry of a divorce judgment decreeing periodic support payments is not made, a party must have had actual knowledge of the judgment, in order to bring the party into contempt of court for a violation of the judgment. This view is supported by the case of In re Kwelman, D.C., 31 F.Supp. 23 (1939), which involved violation of a court order restraining creditors from taking any action except in bankruptcy to collect their claims.

The case entitled Ex parte Felthoven, decided in 1946, emphasizes the importance of actual knowledge where proper service is not made and also the fact that there is no presumption in favor of the regularity of proceedings in contempt matters. In this California case, an order to show cause why the petitioner should not be adjudged guilty of contempt of court for willfully failing to comply with a pendente lite order of the superior court by which he was required to pay certain sums of money for the support of his wife and child and for attorney's fees and costs, was duly issued and served upon the petitioner. The conclusions of the court follow:

"In order to punish for constructive contempt of court, it must appear that the order upon which the contempt proceeding is based has been served on the accused, or that he was present when the order was made, or that he had knowledge of it. Frowley v. Superior Court, 158 Cal. 220, 224, 110 P. 817. * * *

* * * * * *

"A contempt of court proceeding is not a civil action, but is a separate proceeding of a criminal nature and summary character. Hotaling v. Superior Court, 191 Cal. 501, 504, 217 P. 73, 29 A.L.R. 127. The affidavit in such a proceeding constitutes the complaint. Frowley v. Superior Court, 158 Cal. 220, 222, 110 P. 817. The affidavit, the order to show cause, the evidence and the findings in a contempt of court proceeding are to be strictly construed in favor of the accused, and the presumption in favor of the regularity of the proceedings and the judgment does not apply in contempt matters. Groves v. Superior Court, 62 Cal.App.2d 559, 568, 145 P.2d 355. The petitioner was entitled to be clearly and fairly apprised of the particular accusation against him.

* * * * * *

"The court did not have jurisdiction to punish for contempt of court as to the order of March 20, because that order was not served on petitioner and he did not have knowledge of it. * * *" Ex parte Felthoven, 75 Cal. App.2d 465, 171 P.2d 47.

Our statutes provide for both civil and criminal contempts.

Section 27-10-03 of the North Dakota Century Code, Subsection 3, relating to civil contempt, is the most applicable here.

"27-10-03. Acts punishable as civil contempts.—Every court of record of this state may punish as for a civil contempt any person guilty of a neglect or violation of a duty or other misconduct by which a right or remedy of a party to a civil action or proceeding pending in such court may be defeated,

impaired, impeded, or prejudiced in the following cases:

\* \* \* \* \* \*

"3. A party to an action or proceeding, an attorney, or other person, for the nonpayment of a sum of money ordered by the court to be paid in a case where by law execution cannot be awarded for the collection of such sum, or for any other disobedience to any lawful order, judgment, or process of the court;" North Dakota Century Code.

The punishment for civil contempt is set forth in Section 27–10–04 of the North Dakota Century Code.

"27–10–04. Penalty for civil contempt—When party injured indemnified instead of fine being imposed.—Any person guilty of a civil contempt punishable by a court of record of this state may be punished by a fine of not more than two hundred fifty dollars over and above the costs and expenses of the proceedings therein, or by imprisonment in the county jail for a reasonable time, not exceeding six months, and until the fine, if any, is paid, or by both such fine and imprisonment. However, if:

"1. An actual loss or injury has been produced to any party by the misconduct of such person, the court or judge, instead of imposing a fine upon him, shall order him to pay a sufficient sum to indemnify such party, and to satisfy the costs and expenses of such party, and in such case the payment and acceptance of such sum shall be an absolute bar to any action by the aggrieved party to recover damages for such loss or injury; or

"2. The misconduct proved consists of an omission to perform an act or duty which it is yet in the power of such person to perform, he shall be imprisoned only until he has performed it and paid any fine imposed." North Dakota Century Code.

As to the degree of proof required to establish a contempt, our statute lays down no rule.

"27–10–13. Procedure on return of warrant of attachment or order to show cause for contempt.—When a person accused of a criminal or civil contempt is produced by virtue of a warrant of attachment, or appears upon the return of such a warrant or of an order to show cause, the court, unless the accused admits the offense charged, must cause a complaint in the form of an affidavit to be filed specifying the facts and circumstances of the offense charged against him. The accused, under oath, must make written answer thereto by affidavit within such reasonable time as the court allows therefor and either party may produce affidavits or other proof contradicting or corroborating such answer. Upon the original affidavits, the answer, and subsequent proofs, the court must determine whether the accused has committed the offense charged." North Dakota Century Code.

In the case of State v. Harris, 14 N.D. 501, 105 N.W. 621, at 623, where a person was charged with having violated an order of the court, this court said:

"\* \* \* It is contended that in such cases the accused must be shown to be guilty of the contempt beyond a reasonable doubt. The proceedings being criminal in their character, some cases uphold that contention. The weight of authority, however, does not support that rule. The statute lays down no rule as to the degree of proof. It simply says that the court shall determine whether the accused has committed the offense. In contempt cases the rule generally followed is that the offense must be clearly shown to have been committed. 9 Cyc. p. 456, and cases cited."

This court, in Syllabus No. 3 of a decision rendered in 1933, said:

"In order to find the defendant guilty of contempt, the charge must be established by clear and satisfactory evidence." State v. Babcock, 64 N.D. 288, 251 N.W. 849.

In the body of that decision, this court said:

"Contempt proceedings being quasi criminal in character, some courts hold that, like the proof in a criminal case, the evidence must satisfy beyond a reasonable doubt. The rule favored by this court, as indicated in State v. Harris, 14 N.D. 501, 105 N.W. 621, is to the effect that the offense must be clearly shown to have been committed. See the following cases: State ex rel. Continental Coal Company v. Bittner, 102 W.Va. 677, 136 S.E. 202, 49 A.L.R. 968, annotation, page 975; Oster v. People, 192 Ill. 473, 61 N.E. 469, 56 L.R.A. 462; Hotaling v. Superior Court, City and County of San Francisco, 191 Cal. 501, 217 P. 73, 29 A.L.R. 127." State v. Babcock, supra, 251 N.W. at 852.

In Raszler v. Raszler (N.D.), 80 N.W. 2d 535, at 539, this court said:

"The evidence to prove contempt must be clear and satisfactory. State v. Harris, 14 N.D. 501, 507, 105 N.W. 621; State v. Babcock, 64 N.D. 288, 293, 251 N.W. 849, 27 C.J.S., Divorce, § 262(f), p. 1050."

We therefore conclude that where there has not been a valid service of the notice of the entry of a divorce judgment decreeing periodic support payments, proof that the accused party had actual knowledge of the judgment must be clear and convincing, in order to bring the party into contempt of court for a violation of the judgment.

Our view of the evidence in the instant case is that it is not clear that the accused party had actual knowledge of the judgment. If he did not have actual knowledge of the judgment, he could not be in contempt of court.

The order of district court finding the appellant in contempt of court is therefore vacated.

MORRIS, C. J., and STRUTZ, TEIGEN and BURKE, JJ., concur.