Dale HOLTEN, by Harold Holten, Guardian ad Litem, Plaintiff and Respondent,

v.

Robert AMSDEN, Norman Hill, and Julian Wysocki, Defendants,
and
Julian Wysocki, Defendant and Appellant.

Neva LONGTINE, by Grace Findring, her Next Friend and Guardian ad Litem, Plaintiff and Respondent,

v.

Robert AMSDEN, Norman Hill, and Julian Wysocki, Defendants,
and
Julian Wysocki, Defendant and Appellant.

Sharon LILLICO, a Minor, by Viola Lillico, her Guardian ad Litem, Plaintiff and Respondent,

v.

Robert AMSDEN, Norman Hill, and Julian Wysocki, Defendants,
and
Julian Wysocki, Defendant and Appellant.

Civ. Nos. 8483–8485.

Supreme Court of North Dakota.

July 3, 1968.

Rehearing Denied Oct. 15, 1968.

Dahl, Dahl & Greenagel, Grafton, for plaintiff and respondent, Dale Holten.

Grimson & O'Keefe, Grafton, for plaintiff and respondent, Neva Longtine.

DePuy, Fair & O'Connor, Grafton, for plaintiff and respondent, Sharon Lillico.

Letnes, Murray & Marshall, Grand Forks, for defendant and appellant, Julian Wysocki, in all cases.

STRUTZ, Justice.

Three separate actions against the same defendants and growing out of the same automobile accident were consolidated in the district court for the purpose of trial. The jury returned a verdict for the plaintiff and against the defendants Amsden and Wysocki in each of the three cases, and the complaints were dismissed as to defendant Hill. The defendant Wysocki thereupon moved for judgment notwithstanding the verdict or, in the alternative, for a new trial in each of the actions. The trial court denied such motion in each case, and the defendant Wysocki now appeals from the order denying his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, and from the judgment entered in each case. Certain assignments of error are specified, predicated upon the insufficiency of the evidence, rulings in the admission of evidence, and upon the court's instructions to the jury.

The record discloses that the defendant Amsden, seventeen years of age and a resident of Grafton, was the owner of a 1955 Ford sedan. On April 30, 1966, he planned to attend a dance in Minto, North Dakota. His date for the evening was the plaintiff Sharon Lillico, aged 15. After work, he had a person described in the record only as "David" go to a local bar and purchase a fifth of sloe gin and a six-pack of beer for him. He then went home, cleaned up, ate his evening meal, and then went to pick up his date. Shortly after leaving Sharon's home, they met one Robert Swanson and invited him to go to the dance. On the way to Minto, while the parties were drinking, Sharon spilled some sloe gin on her dress and they returned to her home in Grafton so that she could change garments.

The dance was over at midnight, and four other young people, the plaintiffs Neva Longtine and Dale Holten and two others, requested rides back to Grafton with the defendant Amsden.

As the group left Minto in the defendant Amsden's automobile, it was being driven by Robert Swanson. In the front seat of the car, in addition to Swanson, were the plaintiffs Neva Longtine and Lillico and the defendant Amsden. After traveling a short distance, Amsden demanded that he be permitted to drive his own automobile, and Swanson thereupon pulled to the side of the road and the switch of drivers was made. The record discloses that when Amsden took the wheel, the plaintiff Lillico moved over next to the driver. Amsden thereupon put his right arm around her and drove with his left hand. He accelerated rapidly and, in less than a mile after Amsden took the wheel, his Ford automobile was traveling sixty-five to seventy miles per hour. At that point it approached a curve in the highway where the road changes directions from east-west to north-south. As his car entered this curve, Steve Rodgers, one of the persons in the back seat, estimated that they were traveling at sixty-five to seventy miles an hour. At that moment, Rodgers claims that he said to Amsden that he had better slow

down or he would not make it. The plaintiff Holten, sitting directly behind the defendant Amsden, claims to have glanced at the speedometer just as the car was approaching the curve, and says that they were traveling at a speed of seventy miles an hour.

At the entrance to the curve, both from the east and from the north, there were signs posted stating that the speed limit in the curve was forty-five miles an hour.

The car driven by the defendant Wysocki was approaching this curve from the north. The record shows that the occupants of this vehicle had spent several hours at the Eagles Club in Grafton, where Wysocki had had four drinks of whiskey. He was driving at about forty-five miles an hour as he approached the curve and the scene of the accident. He claims that he was driving on his right side of the highway and that he determined this by watching the intermittent white line which marks the center of the highway at this point. The collision occurred at the north end of the curve, just as the defendant Wysocki was about to commence making the turn toward the east and just as the defendant Amsden was about to complete his turn to the north. The defendant Wysocki stated that he did not notice the oncoming car until it was coming around the curve and just before impact.

After the accident, the defendant Wysocki's automobile came to rest some forty feet from the place where most of the debris was found on the highway. The defendant Amsden's vehicle stopped on the highway about 200 feet to the north, facing east, and it was straddling both lanes of traffic. The plaintiffs Lillico and Longtine were found under the defendant Amsden's car. The plaintiff Holten lost an eye in the collision.

On this evidence, the jury returned substantial verdicts for each of the plaintiffs against the defendants Amsden and Wysocki. The defendant Wysocki has taken this appeal from the judgment and the order denying motion for judgment notwithstanding the verdict or, in the alternative, for a new trial in each case. The defendant Amsden has not appealed.

The first issue to be determined on these appeals is whether there is any competent evidence of negligence on the part of the defendant Wysocki which proximately caused or contributed to the injuries of the plaintiffs. For the purpose of this opinion, it will be conceded that the defendant Amsden was grossly negligent since the jury returned a verdict against him for the plaintiffs, who were guests in his car, and, since he has not appealed, there is no need for us to discuss the evidence of the defendant Amsden's negligence and we will confine our consideration to the sufficiency of the evidence to the defendant Wysocki's negligence.

■ In reviewing the sufficiency of the evidence on appeal from a judgment and from an order denying motion for judgment notwithstanding the verdict or for a new trial, the appellate court will review the evidence in the light most favorable to the verdict. Mikkelson v. Risovi (N.D.), 141 N.W.2d 150; Vaux v. Hamilton (N. D.), 103 N.W.2d 291; Lund v. Knoff (N. D.), 85 N.W.2d 676, 67 A.L.R.2d 1110; Leonard v. North Dakota Co-op. Wool Marketing Ass'n, 72 N.D. 310, 6 N.W.2d 576.

■ This court has often held that a verdict of the jury on conflicting evidence will not be disturbed on appeal, in the absence of legal error. Severinson v. Nerby (N.D.), 105 N.W.2d 252; Fox v. Bellon (N.D.), 136 N.W.2d 134; Jasper v. Freitag (N.D.), 145 N.W.2d 879; Moe v. Kettwig (N.D.), 68 N.W.2d 853; Clark v. Josephson (N.D.), 66 N.W.2d 539; Hochstetler v. Graber, 78 N.D. 90, 48 N.W.2d 15.

■ Thus a verdict will not be disturbed on appeal as against the weight of the evidence where it is supported by any competent evidence.

In this case, both drivers testified positively that they were on their right side of the highway in rounding the curve. This, of course, could not possibly have been the case, for if it were true that each was on his own side of the center of the highway, no collision could have occurred. Thus the testimony of at least one, or perhaps both, of the drivers that he was on his right side of the centerline was untrue.

The collision, as shown by the condition of the vehicles after the accident, was head-on, with the left front of both cars being mutilated and the entire left side of the defendant Amsden's car being damaged. Thus the contention of the appellant Wysocki that it was impossible for both of the vehicles to have been over the centerline is not necessarily valid, for, if both of them were over the centerline a short distance, the two vehicles could have been damaged just as they were in the accident. This would be true especially if the defendant Wysocki's vehicle were heading toward the left side at the moment of impact.

■ Is there any competent evidence in this record that would justify the jury's verdict, finding the defendant Wysocki negligent?

There is testimony of the highway patrolman as to marks on the highway, as to debris and its location on the road, and as to damage to the vehicles involved in the accident; from all of which the jury could draw its conclusions. There is further evidence of the highway patrolman that there would be a tendency on the part of the appellant's vehicle, as it entered the curve, to move into the left lane. It is true, the same witness testified, that there also would be a tendency for the car in which the plaintiffs were riding to move into its left lane.

The jury further had before it the testimony of the witnesses for the plaintiffs, who had been riding in the car in which the plaintiffs were riding, that just before impact the Amsden vehicle was on its right side of the highway. The jury apparently believed, from this testimony, that the appellant's automobile was on or near the centerline of the road just before impact. And, since the jury found both drivers negligent, it must have concluded from this evidence, and from the physical facts before it, that both cars were on or over the centerline at the moment of impact.

Thus the facts and circumstances which constitute the alleged negligence are such that reasonable men could draw different conclusions therefrom. Under such circumstances, this court cannot say, in viewing the evidence in the light most favorable to the verdicts for the plaintiffs, that the appellant is entitled to judgment as a matter of law.

There is other evidence from which the jury might have found negligence on the part of the defendant Wysocki. Several occupants of the defendant Amsden's automobile testified that the Wysocki car had its lights on bright, and Amsden testified that he himself was blinded by Wysocki's lights. Neither Wysocki nor any of his witnesses testified that he had dimmed his lights. Wysocki says he cannot remember, and admits that he had not seen the Amsden car until just before impact; that he did not have time to do anything after he saw Amsden's car. But the record discloses that the lights of the Amsden car were visible to persons coming from the direction from which the Wysocki car was coming, for more than half a mile. The fact that Wysocki did not see the Amsden lights until just before impact is further evidence of his negligence in failing to observe that which a reasonable person, under similar circumstances, would have observed. And, having negligently failed to observe, the defendant also failed to see the approach of the defendant Amsden's car, failed to dim his lights, and failed to drive his vehicle with that degree of care required of him under the circumstances then prevailing.

While the evidence admittedly is such that another jury might well have found

for the defendant Wysocki, there is competent evidence in the record on which a jury could find as it did. That being the case, the verdict of the jury will not be disturbed on appeal in the absence of legal error.

The next issue raised by the defendant Wysocki is that the court erred in admitting as an exhibit a picture taken of the plaintiff Longtine while she was a patient in a hospital in Rochester, Minnesota. The defendant contends that the exhibit tended to prejudice the jury for the plaintiff.

■■ The exhibit in question shows the plaintiff Longtine sitting in a hospital bed, with her arm, shoulder, and body bandaged. It shows the parts of the body which were injured. Whether a photograph is admissible in evidence is largely within the judicial discretion of the trial court. As with demonstrative evidence generally, the prime condition on admissibility is that the photograph be identified as portraying certain facts relative to the issues in the lawsuit and verified by some witness on personal knowledge as a true representation of such facts. McCormick on Evidence, Sec. 181, p. 387; Wigmore on Evidence, 3d Ed., Secs. 790–798a, pp. 174–208; 32 C.J.S. Evidence § 709, at p. 986.

This court has held that the admission or exclusion of such evidence is within the sound, judicial discretion of the trial court. Gleson v. Thompson (N.D.), 154 N.W.2d 780.

■ We have examined the photograph complained of and there is nothing about the exhibit that would prejudice the jury. It merely shows the plaintiff Longtine sitting in a hospital bed with bandaging about her arms, shoulder, and body, to indicate where she had been injured. We do not believe the admission of this exhibit was error.

The appellant, Wysocki, next contends that it was error to permit the witness Robert Swanson to testify to a conclusion. He was questioned on cross-examination by the attorney for defendant Amsden relative to Amsden's driving, and he was asked:

"Q. From the time he started driving till the time he got to the curve, were you conscious of him ever being on the wrong side of the road?"

■ The question was objected to as calling for a conclusion, and the objection was overruled. The question perhaps was objectionable in the form in which it was asked, since the only pertinent question was whether the defendant Amsden did, in fact, drive on the wrong side of the center, especially after he had entered the curve. But we do not believe this was so prejudicial as to require reversal. The fact that the witness was not conscious of defendant's ever being on the wrong side of the road was immaterial. But, to warrant reversal because of the allowance of some immaterial matter into evidence, it must appear that the ruling resulted in prejudice. No prejudice resulted from the allowance of this immaterial evidence. The admission of a conclusion which is immaterial but not prejudicial does not constitute reversible error.

The next error specified by the defendant Wysocki is that the trial court erred in refusing to grant a mistrial when counsel impliedly asserted that a witness for such defendant had withheld evidence during the taking of his deposition. This witness was asked:

"Q. And you recall giving a deposition on November 8th of 1967?

"A. Yes.

"Q. And do you recall ever mentioning in any of the questioning regarding the circumstances of it that you ever mentioned anything about inspection of tire marks?"

Counsel for the defendant Wysocki objected to this question, claiming it was im-

proper cross-examination and highly prejudicial, and moved for a mistrial. The record discloses that the trial court sustained the defendant's objection and denied the motion for mistrial and then advised the jury:

"* * * the jury is admonished to disregard any insinuations that might be connected with the question."

 Examination of the record discloses that the witness had not been asked about inspection of tire marks at the taking of his deposition. The trial court therefore properly sustained the defendant's objection to the question. The court also immediately admonished the jurors to disregard any insinuations which might be connected with the question. The court thus did everything it could to avoid any adverse effect of the plaintiff's improper question, and it did so at once. Under the circumstances, it was not error to deny the motion for mistrial.

 This court has held that declaring a mistrial should be resorted to only when there is a fundamental defect in the proceedings of a trial or when something has happened during the trial which makes it evident that further proceedings would be productive of manifest injustice. Hoffer v. Burd, 78 N.D. 278, 49 N.W.2d 282; Thornburg v. Perleberg (N.D.), 158 N.W. 2d 188. The asking of the improper question was not prejudicial, in the light of the trial court's subsequent admonition to the jury. The trial court's denial of the motion for mistrial was proper.

 The next specification of error urged by the defendant Wysocki is that the trial court's instruction relative to the degree of care to be exercised by a minor was erroneous insofar as it applied to the defendant Amsden; that the defendant Amsden was a licensed operator of a motor vehicle and should be held to the same degree of care required of an adult.

We find no merit in this specification of error. Without considering the question raised by the defendant Wysocki of whether a minor who is licensed to operate a motor vehicle in this State should be held to the same degree of care required of an adult, we would point out that the jury in this case brought in a verdict against the defendant Amsden, thus finding that he was grossly negligent in the operation of his motor vehicle. Even if the contention of the defendant Wysocki should be held to have some merit, it could not help the defendant Wysocki in this case since the jury in fact did find the defendant Amsden grossly negligent in the action.

 We do not determine whether the instruction complained of was error, but we do point out that even if it was, it was without prejudice. A party cannot assign as error that which is not prejudicial to him. Any error not accompanied by prejudice is not ground for reversal. Hadland v. St. Mark's Evangelical Lutheran Church (N.D.), 111 N.W.2d 775; Maier v. Holzer (N.D.), 123 N.W.2d 29.

The final specification of the defendant Wysocki is that the judgments are excessive. The jury awarded the plaintiff Lillico $50,500; the plaintiff Neva Longtine, $32,000; and the plaintiff Holten $27,000.

 Before this court will find a verdict excessive, it must find that the amount awarded is so unreasonable and extreme as to indicate passion and prejudice on the part of the jury. A motion for new trial or for a reduction of the verdict is addressed to the sound, judicial discretion of the trial court, and the trial court's determination of the motion will not be disturbed on appeal except in case of manifest abuse of discretion. Loveland v. Nieters, 79 N.D. 1, 54 N.W.2d 533. In the Loveland case, this court held that a $15,-000 verdict for personal injuries to leg and scalp, where $1,500 had been spent for hospitalization and for doctor and ambulance services, was not excessive.

In Steinke v. Northern Telephone Co., 49 N.D. 433, 191 N.W. 477, decided in

1922, this court held that a verdict of $12,230 awarded to a plaintiff who was severely and permanently injured, was not excessive. In 1930, we held that where a plaintiff who had suffered third-degree burns on face and body recovered a verdict of $14,700, such verdict was not so excessive as to indicate passion and prejudice on the part of the jury. Moen v. Melin, 59 N.D. 582, 231 N.W. 283. It is conceded that the value of the dollar today is far less than it was in 1922 or in 1930.

Now let us examine the injuries suffered by the plaintiff in this action and the verdict returned by the jury in each case to determine whether any of such verdicts are excessive.

■ The plaintiff Lillico, who was fifteen years old at the time of the accident, recovered the greatest verdict. It was for the sum of $50,500. The record discloses that this plaintiff suffered deep burns on the left thigh, the side of her right knee, and the lateral side of the left calf. Such burns were caused by the automobile falling and coming to rest on the plaintiff, and the muffler resting on her left leg and the inner side of her right knee. The plaintiff further suffered a fracture of her pelvis and injury to her bladder caused by a sharp piece of the pelvic bone puncturing the bladder. The deep burns on her leg damaged the muscles to the leg, impairing their function. The record discloses that the plaintiff suffered prolonged severe and excruciating pain and that she had to undergo extensive skin grafting, and that she was in traction for three to four months until the fractured pelvis was healed and until the several skin grafts had been healed. She suffered deep and permanent scarring as well as functional defects of her right leg. She was required to undergo almost three months of rehabilitation treatment at a rehabilitation center. The record further shows that the plaintiff will suffer permanent defects of scarring, that she will suffer permanent weakening of the left leg, and that further surgery may be required. The medical, hospital, and other costs incurred in the treatment of these injuries, up to the time of trial, were slightly under $13,000.

In view of the very serious and permanent injuries suffered by this plaintiff, we do not believe the verdict was so large as to indicate passion and prejudice on the part of the jury.

■ The plaintiff Neva Longtine, fifteen years of age at the time of the accident, was awarded a recovery of $32,000. She also suffered very severe third-degree burns to her right side and right arm. The burns extended through the skin, muscle, and to the bone, destroying some of the muscle in her back, and part of the bone was burned. She suffered great pain as a result of these injuries. Her left collarbone also was broken, and she suffered gravel burns on her face, the latter injury being of a temporary nature, however. She also underwent extensive skin grafting. She suffered loss of sensation in the injured areas. Her medical and hospital costs were just under $5,000.

In view of the serious injuries suffered by this plaintiff, we cannot say that the amount of the verdict in this case indicated any passion or prejudice on the part of the jury.

■ The third verdict was for the sum of $27,000, returned in favor of the plaintiff Dale Holten. The record shows that this plaintiff was seventeen and a half years of age at the time of the accident. It further discloses that he suffered the loss of his left eye and he received cuts on his forehead, cheek, neck, and the top of his head. This court cannot say that the amount of this verdict, where the plaintiff suffered the permanent loss of one eye and must henceforth wear an artificial eye, indicates passion and prejudice on the part of the jury.

The trial court denied the motions for new trial. It found that these verdicts were not tainted by passion and prejudice. We are agreed that when all of the perti-

nent facts in each case are considered, it cannot be said that the amount of any of the verdicts is so large as to indicate passion and prejudice.

For reasons stated herein, the judgments and the orders appealed from are affirmed.

TEIGEN, C. J., and ERICKSTAD, PAULSON and KNUDSON, JJ., concur.